UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMONE RIVERS, | No. C-09-1614 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DO DISMISS** |
| COUNTY OF MARIN, *et al.*, | |
| Defendants. | **(Docket No. 32)** |

Plaintiff Simone Rivers has filed an employment discrimination suit against Defendants the County of Marin and two County employees, William Burke and Michael Daly. Currently pending before the Court is Defendants' motion to dismiss some, but not all, of the claims asserted in Ms. Rivers's first amended complaint ("FAC"). Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss. Ms. Rivers shall be given leave to amend as discussed below.

## I. FACTUAL & PROCEDURAL BACKGROUND

In her FAC, Ms. Rivers pleads fourteen causes of action. In their motion to dismiss, Defendants challenge seven of those claims, more specifically:

(1) Gender/sex harassment.

(2) Sex/gender discrimination.

(3) Race harassment.

(4) Race discrimination (County only).

(5) Violation of California Labor Code § 233 (County only).

(6) Violation of the Fair Labor Standards Act (County only). *See* 29 U.S.C. § 215.

(7) Violation of 42 U.S.C. §§ 1983 and 1985, based on the First Amendment, the Equal Protection Clause, and the Due Process Clause.

In her opposition, Ms. Rivers states that she is willing to drop both the gender/sex and race harassment claims as well as the §§ 1983 and 1985 claims based on free speech. In addition, Ms. Rivers states that she is willing to limit her § 233 claim to lost wages only.

Given these concessions by Ms. Rivers, the relevant allegations in her FAC are as follows.

Ms. Rivers, an African American woman, was formerly employed by the County's Probation Department. *See* FAC ¶¶ 12-13. Mr. Burke and Mr. Daly were Ms. Rivers's supervisors while she was employed there. *See* FAC ¶ 5; *see also* Opp'n at 6 (claiming that Mr. Burke is the Chief Probation Officer and Mr. Daly the Assistant Chief Probation Officer). Ms. Rivers was terminated from employment on October 15, 2008. *See* FAC ¶ 13.

Prior to being terminated, Ms. Rivers had – in 2003 and 2005 – filed two different lawsuits against the County. In each lawsuit, she alleged harassment, discrimination, and retaliation. *See* FAC ¶¶ 18-21. Both of the actions settled, in 2004 and 2006, respectively. *See* FAC ¶¶ 20-21. As part of the settlement of the second lawsuit, the County was required to participate in a structured dispute resolution mechanism for approximately six months. *See* FAC ¶ 21.

According to Ms. Rivers, after the six-month period ended, Defendants continued to target her with the goal of terminating her employment. *See* FAC ¶ 22. Defendants' conduct led to Ms. Rivers suffering a major depressive episode for which her physicians removed her from work. *See* FAC ¶ 28. On October 13, 2008, Mr. Daly (with Mr. Burke's approval) demanded that Ms. Rivers provide an additional doctor's note for any continued leave by the end of that business day. Ms. Rivers contacted Defendants and told them that, given the short notice, she was only able to get a medical appointment for the following day, October 14. On October 14, 2008, Ms. Rivers and her union representative provided Mr. Burke and Mr. Daly with a copy of her doctor's leave notice, indicating that her return to work would be October 28, 2008. *See* FAC ¶ 30. The next day, *i.e.*, October 15, 2008, Mr. Burke (with the consultation of Mr. Daly) terminated her employment due to

"job abandonment." Defendants did not give Ms. Rivers any pre-termination due process hearing. *See* FAC ¶ 31.

In addition to the above, Ms. Rivers alleges in her FAC that, throughout the time that she was employed by the County, she was subjected to discriminatory behavior designed to prevent her and other women from being promoted and obtaining supervisory positions. *See* FAC ¶¶ 14, 16. As examples of discrimination, Ms. Rivers refers to unspecified adverse employment actions and unspecified differential treatment. *See* FAC ¶ 16. Ms. Rivers also claims that there was a pattern and practice of discrimination against women – *e.g.*, women were disciplined differently; women were assigned vague and inconsistent jobs to ensure that they would fail; women were removed from job assignments based on stereotypes about female law enforcement officers; women were not given necessary resources when they requested assistance, improper personal remarks were made on women's evaluations; women were ignored and isolated in the workplace; and women were placed in dangerous situations with criminals and their requests for assistance were ignored. *See* FAC ¶ 16.

Similarly, Ms. Rivers alleges that, throughout the time that she was employed by the County, she was subjected to discriminatory behavior designed to prevent her and other African Americans from being promoted and obtaining supervisory positions. *See* FAC ¶ 17. Similar to above, as examples of discrimination, Ms. Rivers refers to unspecified adverse employment actions and unspecified differential treatment. *See* FAC ¶ 17.

## II. **DISCUSSION**

A. Legal Standard

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pled allegations in the complaint and view them in the light most favorable to the plaintiff. See *Moss v. United States Secret Serv.*, 572 F.3d 962, 967-68 (9th Cir. 2009). For a complaint to survive a motion to dismiss, the nonconclusory factual content of the complaint (plus reasonable inferences from that content) must plausibly suggest a claim entitling the plaintiff to relief. See *id.* at 969.

> A claim has facial plausibility . . . when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility

> standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

B.  <u>Sex/Gender Harassment and Race Harassment</u>

As noted above, Ms. Rivers has agreed to drop the gender/sex harassment claim and the race harassment claim. Accordingly, these claims are dismissed with prejudice.

C.  <u>Sex/Gender Discrimination</u>

   1.  <u>Individual Defendants</u>

Ms. Rivers has asserted a claim for sex/gender discrimination against not only the County but also the individual defendants. The Court agrees with Defendants that the Title VII and FEHA claims against the individual defendants should be dismissed with prejudice. As Defendants point out, in *Miller v. Maxwell's International, Inc.*, 991 F.2d 583 (9th Cir. 1991), the Ninth Circuit held that individual employees may not be held liable under Title VII or the ADEA. *See id.* at 587-88. In *Reno v. Baird*, 18 Cal. 4th 640 (1998), the California Supreme Court stated that "individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts." *Id.* at 663. Accordingly, the sex/gender discrimination claim asserted against Mr. Burke and Mr. Daly is dismissed with prejudice.

   2.  <u>County</u>

Defendants argue that the sex/gender discrimination claim as asserted against the County is lacking in specificity. That the allegations do not specify the roles, if any, of the individual defendants with respect to alleged adverse activities is immaterial to the Title VII claims. If proven, the County would be liable for the conduct of its employees regardless of their specific identity. However, the lack of specificity is problematic in other ways First, it is not clear based on the allegations in the FAC what were the adverse employment actions suffered by Ms. Rivers as opposed to other women. Second, it is not clear when those adverse employment actions took place – *i.e.*, before or after the prior lawsuits filed by Ms. Rivers which were eventually settled. Claims

based upon such earlier actions were presumably released. In short, the complaint does not specify what adverse activities based on gender were taken against Ms. Rivers subsequent to the last lawsuit. Because the FAC is lacking in sufficient specificity, the Court dismisses the sex/gender discrimination claim but without prejudice. Ms. Rivers is given leave to amend the claim to address these deficiencies.

D. <u>Race Discrimination</u>

The race discrimination claim, pled against the County only, suffers from the same problems as the sex/gender discrimination claim. Accordingly, the Court dismisses the race discrimination claim without prejudice and gives Ms. Rivers leave to amend to address the deficiencies.

E. <u>California Labor Code § 233</u>

California Labor Code § 233 provides in relevant part as follows:

> (a) Any employer who provides sick leave for employees shall permit an employee to use in any calendar year the employee's accrued and available sick leave entitlement, in an amount not less than the sick leave that would be accrued during six months at the employee's then current rate of entitlement, to attend to an illness of a child, parent, spouse, or domestic partner of the employee. . . .
>
> . . . .
>
> (c) No employer shall deny an employee the right to use sick leave or discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an employee for using, or attempting to exercise the right to use, sick leave to attend to an illness of a child, parent, spouse, or domestic partner of the employee.
>
> (d) Any employee aggrieved by a violation of this section shall be entitled to reinstatement and actual damages or one day's pay, whichever is greater, and to appropriate equitable relief.

Cal. Lab. Code § 233.

In their motion to dismiss, Defendants argue that the § 233 claim as pled in the FAC should be dismissed because Ms. Rivers is seeking money damages for the alleged statutory violation but she never submitted a written claim to the County as required by the California Tort Claims Act

("CTCA").[1] In response, Ms. Rivers states that she is now willing to limit her § 223 claim to wages only. Ms. Rivers notes that, under California Government Code § 905(c), "[c]laims by public employees for fees, salaries, wages, mileage, or other expenses and allowances" are not subject to the claim presentation requirement. Cal. Gov't Code § 905(c).

Because the FAC on its face actually seeks more than just lost wages, *see* FAC ¶ 100, the Court shall dismiss the § 233 claim. However, Ms. Rivers is given leave to amend the § 233 claim to make clear that, for the alleged statutory violation, she is seeking only lost wages – *i.e.*, wages earned but not paid. *See Loehr v. Ventura County Community College Dist.*, 147 Cal. App. 3d 1071, 1080 (1983) ("constru[ing] section 905, subdivision (c) as exempting from the act claims for salaries and wages which have been earned but not paid" because "[e]arned but unpaid salary or wages are vested property rights, claims for which may not be properly characterized as actions for monetary damages").

At the hearing, Defendants argued that, even if Ms. Rivers limited the § 233 claim to lost wages only, she still would have no viable claim because she was paid for her sick leave. However, the Court cannot prejudge that issue at this juncture. Moreover, the Court notes that § 233 provides that "[n]o employer shall deny an employee the right to use sick leave or discharge, threaten to discharge, demote, suspend, *or* in any manner discriminate against an employee for using, or attempting to exercise the right to use, sick leave to attend to an illness of a child, parent, spouse, or domestic partner of the employee." Cal. Lab. Code § 233(c) (emphasis added). Ms. Rivers seems to be alleging that the County violated § 233 by, *inter alia*, discriminating against, retaliating against,

---

[1] *See* Cal. Gov't Code § 911.2(a) (providing that "[a] claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) not later than six months after the accrual of the cause of action"); *id.* § 945.4 (providing that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division"); *see also State of Cal. v. Superior Court*, 32 Cal. 4th 1234, 1239 (2004) (stating that, under the above-referenced statutes, "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity").

and disciplining her for using her authorized sick leave to care for her child. *See* FAC ¶¶ 23-27, 99. Even if damages were limited under *Loehr*, she may still allege and prove a violation.

F. <u>FLSA</u>

Based on the allegations in the FAC, it appears that Ms. Rivers intended to assert a claim for violation of § 215 of the Fair Labor Standards Act ("FLSA"), which makes it unlawful

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act [29 U.S.C. § 201 *et seq.*, generally], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). However, there is some ambiguity in the FAC because, even though the complaint refers to the FLSA and to alleged discrimination, retaliation, and discipline based on her "filing an internal complaint regarding [D]efendants' interference with her overtime and allotted sick leave compensation," FAC ¶ 103, the pleading also refers to the "Labor Code."

So that the pleadings are clear, the Court orders Ms. Rivers to amend the "§ 215 claim" to clarify that the claim is brought pursuant to the FLSA only and not the California Labor Code.

G. <u>Sections 1983 and 1985</u>

As noted above, initially, Ms. Rivers pled §§ 1983 and 1985 claims based on violations of the First Amendment, the Equal Protection Clause, and the Due Process Clause. In her opposition, Ms. Rivers dropped the claims to the extent based on the First Amendment only. Therefore, the Court dismisses with prejudice the §§ 1983 and 1985 claims based on the First Amendment. The only claims remaining are the §§ 1983 and 1985 based on the Equal Protection and Due Process Clauses.

1. <u>Section 1983 – Equal Protection</u>

As discussed above, Ms. Rivers's claims of disparate treatment based on sex/gender and race are lacking in specificity and therefore the § 1983 claim based on equal protection is also dismissed without prejudice.

The Court notes that, if Ms. Rivers wishes to amend and pursue her claim against the individual defendants, she must include specific allegations as to how they violated her right to equal protection.

As for the County, a naked assertion of pattern or practice will not be insufficient to make a facially plausible claim of municipal liability. *See, e.g.*, *Scaccia v. County of Onondaga*, No. 5:07-CV-0207 (GTS/GJD), 2009 U.S. Dist. LEXIS 117080, at *26 (N.D.N.Y. Dec. 15, 2009) (noting that, "although Plaintiff alleges conclusorily that the County had a policy or custom of delaying the provision of medical care to other inmates until their release from custody, Plaintiff fails to allege facts plausibly suggesting that any other inmate experienced a delay in receiving medical care"). *But see Peschel v. City of Missoula*, No. CV 08-79-M-JCL, 2009 U.S. Dist. LEXIS 25333, at *12 (D. Mont. Mar. 27, 2009) (concluding that a bare allegation that an individual defendant's conduct confirmed to official policy, custom, or practice is sufficient based on Ninth Circuit case decided prior to *Twombly*; noting that, post-*Twombly*, district courts in the Ninth Circuit have continued to apply this standard). That being said, the FAC does contain sufficient allegations of a pattern or practice with respect to the sex/gender discrimination claim at least. *See* FAC ¶ 16 (discussing, *e.g.*, women being disciplined differently and being assigned vague and inconsistent jobs to ensure that they would fail). The FAC, however, does not contain sufficient allegations of a pattern or practice with respect to the race discrimination claim. *See* FAC ¶ 17 (simply alleging unspecified adverse employment actions and differential treatment). Ms. Rivers is given leave to amend.

2. <u>Section 1983 – Due Process</u>

At the hearing, Ms. Rivers clarified that the § 1983 due process claim was being asserted against the individual defendants only and not the County. Therefore, the § 1983 due process claim against the County is dismissed with prejudice.

a. <u>Procedural Due Process</u>

For the procedural due process claim, at the hearing the parties agreed that Ms. Rivers could amend the claim to include allegations regarding, *e.g.*, Personnel Management Regulation 48.4 (addressing job abandonment). She is given leave to do so.

b. <u>Substantive Due Process</u>

Substantive due process protects against arbitrary government deprivation of a protected property or liberty interest. *See Stoot v. City of Everett*, 582 F.3d 910, 928 (9th Cir. 2009); *Brittain v. Hansen*, 451 F.3d 982, 991(9th Cir. 2006). Defendants argue that any claim based on substantive due process should be dismissed because there is no liberty or property interest for which Ms. Rivers is entitled to substantive due process protection. Defendants point out that the many courts have held that "tenured public employment is [not] a fundamental property interest entitled to substantive due process protection." *Nicholas v. Pennsylvania St. Univ.*, 227 F.3d 133, 142 (3d Cir. 2000) (citing cases from the Fourth, Sixth, Eighth, and Eleventh Circuits). In *Nicholas*, the Third Circuit explained:

> Nicholas's tenured public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution. We agree with the analysis of the District Court in *Homar v. Gilbert* that it cannot be reasonably maintained that public employment is a property interest that is deeply rooted in the Nation's history and traditions. Nor does public employment approach the interests implicit in the concept of ordered liberty like personal choice in matters of marriage and family. Accordingly, we view public employment as more closely analogous to those state-created property interests that this Court has previous deemed unworthy of substantive due process than to the venerable common-law rights of real property ownership implicated in *DeBlasio*.

*Id.* at 143 (internal quotation marks omitted).

The Ninth Circuit appears to take a slightly different view. In *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007), the Ninth Circuit addressed the scope of a substantive due process as applied to a public employee, holding such a claim may be made in extreme cases. *See id.* The Ninth Circuit

> decline[d] to hold that there is no substantive due process claim for a public employer's violations of occupational liberty. Rather, we limit the claim to extreme cases, such as a "government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure." Such a governmental act would threaten the same right as a legislative action that effectively banned a person from a profession, and thus calls for the same level of constitutional protection.

9

*Id.* at 997-98.

In the instant case, Ms. Rivers argued for the first time at the hearing that her situation is effectively one where she is being deprived of the right to pursue a profession altogether. More specifically, she asserted that, given her profession as a peace officer, any potential employer would be required to conduct a detailed background investigation as to why she is no longer employed with the County and that, even if the County stated only that there was job abandonment, that employer would not hire her. Given this articulation, the Court cannot say that as a matter of law Ms. Rivers has failed to state a claim for violation of her substantive due process rights. A factual record will have to be developed. The motion to dismiss this claim is denied.

3. <u>Section 1985 – Equal Protection and Due Process</u>

Title 42 U.S.C. § 1985 makes unlawful a conspiracy to interfere with a person's civil rights. As pled in the FAC, the § 1985 claim appears to have been asserted against all Defendants – *i.e.*, both the individual defendants as well as the County. In their motion to dismiss, Defendants argue that the § 1985 claim must be dismissed because the individual defendants are agents of the County and the County is incapable of conspiring with itself.

In her opposition, Ms. Rivers appears to concede that there is no § 1985 claim against the County. Accordingly, the § 1985 claim against the County is dismissed with prejudice.

As for the individual defendants, the Court acknowledges that there is authority to support Defendants' position that the intraconspiracy doctrine bars their liability. *See, e.g.*, *Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) (noting that the intracorporate conspiracy doctrine "provides that where all of the defendants are members of the same collective entity, there are not two separate people to form a conspiracy") (internal quotation marks omitted); *Meyers v. Starke*, 420 F.3d 738, 742 (8th Cir. 2005) (noting that "the intracorporate conspiracy doctrine . . . allows corporate agents acting within the scope of their employment to be shielded from constituting a conspiracy under § 1985"); *Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003) (stating that "[t]he intracorporate conspiracy doctrine provides that the officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, legally are incapable of conspiring together"); *Rabkin v. Dean*, 856 F. Supp. 543, 551-52 (N.D. Cal. 1994)

(Wilken, J.) ("find[ing] persuasive the rationale supporting application of the intra-corporate conspiracy doctrine to bar a Section 1985 claim where the conspiratorial conduct challenged is essentially a single act by a single governmental body acting exclusively through its own officers, each acting within the scope of his or her official capacity").

However, there is also authority to the contrary. For example, in *Brever v. Rockwell International Corp.*, 40 F.3d 1119 (10th Cir. 1994), the Tenth Circuit noted as follows:

> Five circuits have extended the intracorporate conspiracy doctrine to actions under sections 1983 and 1985, while four others have severely limited or questioned the applicability of the doctrine in the civil rights context. We agree with the latter group of courts that the doctrine, designed to allow one corporation to take actions that two corporations could not agree to do, should not be construed to permit the same corporation and its employees to engage in civil rights violations. *See Stathos v. Bowden*, 728 F.2d 15, 21 (1st Cir. 1984) (per Breyer, J.) ("Where 'equal protection' is at issue . . . one cannot readily distinguish in terms of harm between the individual conduct of one enterprise and the joint conduct of several."). "In these situations, the action by an incorporated collection of individuals creates the 'group danger' at which conspiracy liability is aimed, and the view of the corporation as a single legal actor becomes a fiction without a purpose." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981).
>
> Moreover, even those circuits that extend the doctrine to civil rights cases would not apply it here. Courts have recognized an exception where an officer or agent has "'an independent personal stake in achieving the corporation's illegal objective.'" *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985) (quoting *Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974)); *see also Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir. 1987). It is clear that Ms. Pitts' co-workers did have a personal stake in seeking first to deter and later to retaliate for her testimony before the grand jury. By testifying to the illegal operation of the incinerator at Rocky Flats, Ms. Pitts and Ms. Brever implicated the employees in a criminal activity. Also, statements allegedly made by defendants indicate that they feared plaintiffs' testimony would lead to the plant's closing and the loss of defendants' jobs. *See* Aplt. App. at 186, ¶ 5; id. at 11, ¶ 35(l). Ms. Pitts' allegations, therefore, suggest that the employees were acting for their own personal purposes and not blindly executing corporate policy. In doing so, they became "independent actors[] who can conspire with the corporation." *Dissouy*, 660 F.2d at 603.

*Id.* at 1126-27; *see also O. H. v. Oakland Unified Sch. Dist.,* No. C-99-5123 JCS, 2000 U.S. Dist. LEXIS 21725, at *13-27 (N.D. Cal. Apr. 17, 2000) (relying on, *inter alia*, a prior decision issued by Judge Orrick in rejecting the argument that the intracorporate conspiracy doctrine prevented

individual defendants from being held liable under § 1985); *Washington v. Duty Free Shoppers*, 696 F. Supp. 1323, 1327 (N.D. Cal. 1988) (Orrick, J.) (noting that "[c]onspiracies to discriminate and to deprive Blacks or other minorities of these basic rights can only perpetuate inequality, even if formed and carried out within a single business"; accordingly "find[ing] that agreements to discriminate between a business and its employees threaten exactly the group danger at which conspiracy liability is aimed by the enactment of §§ 1985(3) and 1986" and so "the view of a business as a single legal actor becomes a fiction without a purpose").

The Court is persuaded that the Tenth Circuit's approach and that of Judge Spero in *O. H.* and Judge Orrick in *Washington* is correct. The intracorporate conspiracy doctrine does not bar liability in the context of the discrimination claims here. However, for the reasons stated above, the lack of specificity as to the alleged wrongdoing renders the claim of conspiracy inadequate. The Court therefore dismisses the § 1985 claim asserted against the individual defendants, but without prejudice. Ms. Rivers shall have leave to amend.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The only claims dismissed with prejudice are: (1) the sex/gender harassment claim; (2) the race harassment claim; (3) the sex/gender discrimination against the individual defendants only; (4) the § 1983 First Amendment claim; (5) the § 1985 First Amendment claim;(6) the § 1983 due process claim against the County only; and (7) the § 1985 equal protection and due process claims against the County only. For all other dismissed claims, the dismissal is without prejudice, and Ms. Rivers shall have two weeks from the date of this order to file a second amended complaint to address the deficiencies identified above.

This order disposes of Docket No. 32.

IT IS SO ORDERED.

Dated: January 8, 2010

EDWARD M. CHEN
United States Magistrate Judge